# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

_____
                                    )
DIPESH V. CHAUHAN, *et al.*,        )
                                    )
            Plaintiffs,             )
                                    )
        v.                          ) Civil Action No. 10-491 (EGS)
                                    )
JANET NAPOLITANO, Secretary,        )
U.S. Dept. of Homeland              )
Security, *et al.*,                 )
                                    )
            Defendants.             )
_____)

## **MEMORANDUM OPINION**

Plaintiffs, husband and wife Dipesh V. Chauhan and Divya D. Chauhan bring claims against the Secretary of the Department of Homeland Security, the Attorney General of the United States, the Director of the Federal Bureau of Investigation ("FBI"), the Director of United States Citizenship and Immigration Services ("USCIS"), the Director of USCIS' Dallas Field Office, and the Director of USCIS' Atlanta District Office, alleging that they have unreasonably delayed processing plaintiffs' applications for adjustment of their status.  Pending before the Court is defendants' motion to transfer venue to the United States District Court for the Northern District of Texas ("Northern District of Texas").  Upon consideration of the motion, the response and reply thereto, the applicable law, and the entire record, the Court **GRANTS** defendants' motion to transfer venue.

## I. BACKGROUND

### A. Factual History

Plaintiffs, Indian nationals, have at all times relevant been residents of Irving, Texas. Compl. ¶¶ 13-14. On May 12, 2008, plaintiffs filed with the USCIS Form I-485 Applications for Adjustment of Status ("I-485 applications") to become lawful permanent residents. Compl. ¶¶ 28-29. USCIS initially processed plaintiffs' I-485 applications at its Service Center in Missouri, and then transferred plaintiffs' applications to its Dallas Field Office, located in Irving, Texas, for adjudication. Compl. ¶ 31; *see also* Defs.' Mem. at Ex. 1, Declaration of Alma L. Montellano ("Montellano Decl.") ¶ 1. Plaintiffs appeared at the Dallas Field Office for biometrics appointments in June 2008. Compl. ¶ 32. Plaintiffs also attended interviews at the Dallas Field Office on February 9, 2009. Compl. ¶ 33; Exs. L and M. Plaintiffs have contacted the USCIS on multiple occasions regarding the status of their applications. They have spoken with USCIS representatives by telephone and Mrs. Chauhan has met with USCIS representatives in the Dallas Field office. Compl. ¶¶ 45-46. Mrs. Chauhan alleges that during one of these meetings, on December 11, 2009, she was told that plaintiffs' files had been transferred to USCIS' Atlanta District Office for review, and the Atlanta office would "then return the[] [files] to the Dallas Office to make a final decision." Compl. Ex. B,

Declaration of Divya Chauhan ("Divya Chauhan Decl.") ¶ 12.c. Plaintiffs have not yet received final decisions regarding their applications. Compl. ¶ 6.

**B.  Procedural History**

Plaintiffs filed suit in this Court on March 24, 2010 pursuant to the Mandamus Act, 28 U.S.C. § 1361, the Declaratory Judgment Act, 28 U.S.C. § 2201, and the Administrative Procedure Act, 5 U.S.C. § 702, to compel action on their I-485 applications for adjustment of immigration status. On June 4, 2010, defendants filed a motion to transfer this case to the Northern District of Texas and for an extension of time to respond to the complaint until the Court rules on the motion to transfer venue. On June 11, 2010, the Court stayed further proceedings in this case pending resolution of defendants' motion to transfer venue. The parties completed briefing on the motion to transfer, and it is now ripe for determination by the Court.

**II.  STANDARD OF REVIEW**

The federal venue transfer statute, 28 U.S.C. § 1404(a), provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The district court has discretion to adjudicate motions to transfer according to an "'individualized case-by-case consideration of convenience and

fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)). The moving party bears the burden of establishing that transfer of the action is proper. *See Devaughn v. Inphonic, Inc.*, 403 F. Supp. 2d 68, 71 (D.D.C. 2005).

Defendants must make two showings to justify transfer. First, defendants must establish that the plaintiffs could have brought suit in the proposed transferee district. *See id.* at 71-72; *Trout Unlimited v. United States Dep't of Agric.*, 944 F. Supp. 13, 16 (D.D.C. 1996). Second, defendants must demonstrate that considerations of convenience and the interests of justice weigh in favor of a transfer. *Devaughn*, 403 F. Supp. 2d at 72; *Trout Unlimited*, 944 F. Supp. at 16. The Court may consider materials outside the pleadings in considering a motion to transfer. *See, e.g.*, *Stearns v. McGuire*, 512 F.2d 918, 933-34 (D.C. Cir. 1974).

**III. DISCUSSION**

**A.    Where the Case Could Have Been Brought**

Before the Court transfers an action to another venue, the defendant must show that the plaintiff could have brought the action in the proposed transferee district. *Devaughn*, 403 F. Supp. 2d at 72. In an action brought against an officer of employee of the United States or its agencies venue is proper in any district where (1) a defendant resides; (2) a substantial

4

part of the events or omissions giving rise to the claim occurred; or (3) the plaintiff resides, if no real property is involved in the action. 28 U.S.C. § 1391(e).

The defendants argue and the plaintiffs do not contest that plaintiffs could have brought this case in the Northern District of Texas. The director of USCIS' Dallas Field Office, who has been named as a defendant, resides in that district. The plaintiffs also reside in that district. As set forth in Section I.A., a substantial part of the events or omissions giving rise to the claim occurred in the Dallas Field Office. Finally, while the plaintiffs' files may have been transferred to UCSIS' Atlanta District Office at one point, their files are currently at the Dallas Field Office, where it is undisputed that "a final decision" on their I-485 applications will be made. Compl. Ex. B, Divya Chauhan Decl. ¶ 12.c; *see also* Montellano Decl. ¶ 2; Supplemental Declaration of Alma Montellano ("Montellano Supp. Decl.") ¶ 6. Accordingly, the Court concludes that venue is proper in the Northern District of Texas.

**B. The Balance of Private and Public Interests**

As this action could have been brought in the Northern District of Texas, the Court must now determine whether equitable factors support defendants' requested transfer. In determining whether transfer is justified, the Court weighs a number of private-interest and public-interest factors. *See Devaughn*, 403

5

F. Supp. 2d at 72. In this case, these factors weigh in favor of transfer to the Northern District of Texas.

    1.  **Private Interest Factors**

The private interest factors that the Court considers include: (1) the plaintiff's choice of forum; (2) the defendants's choice of forum; (3) where the claim arose; (4) the convenience of the parties; (5) the convenience of the witnesses; and (6) the ease of access to proof. *See Montgomery v. STG Int'l, Inc.*, 532 F. Supp. 2d 29, 32-33 (D.D.C. 2008).

The first three factors weigh in favor of transfer. While a plaintiff's choice of forum is typically accorded substantial deference, such deference is weakened when a plaintiff chooses a forum other than his home forum, or when most of the relevant events occurred elsewhere. *See Southern Utah Wilderness Alliance v. Norton*, 315 F. Supp. 2d 82, 86 (D.D.C. 2004). In this case, both reasons to lessen deference apply. Plaintiffs live in the Northern District of Texas, and, as discussed above, the relevant events giving rise to plaintiffs' claims have occurred or will occur there.

Plaintiffs assert that their case should remain in this District because the "unreasonable delay" in their case occurred at "the headquarters of the FBI, located in Washington, D.C., through that office's failure to timely complete name checks and/or other background checks." Pls.' Opp'n at 6. This

allegation cannot succeed as a matter of fact or of law.  First, it has been factually refuted by the defendants.  Defendants have provided two declarations from Alma L. Montellano, an Immigration Services Officer for USCIS in its Dallas Field Office.  Ms. Montellano provided unrebutted statements that applications for adjustment of status require different "level[s] of review and investigation from either the USCIS or other agencies for a number of reasons," Montellano Decl. ¶ 5; that investigations into the plaintiffs' applications are "ongoing"; Montellano Decl. ¶ 11; and, more importantly, that the FBI name checks for plaintiffs were not the cause of the delay.  Indeed, the name checks were completed by September 2008.  *See* Montellano Supp. Decl. at ¶¶ 3-4.  Accordingly, as a factual matter, plaintiffs have not demonstrated that the District of Columbia has "meaningful ties" to their case.  *S. Utah Wilderness Alliance*, 315 F. Supp. 2d at 86.

Second, even if the FBI had not timely completed plaintiffs' name checks or other checks, it would not be sufficient to support venue here.  It is well established that "mere involvement on the part of federal agencies, or some federal officials who are located in Washington D.C., is not determinative of venue" when the ultimate governmental decision will not occur in this district.  *Aftab v. Gonzalez*, 597 F. Supp. 2d 76, 82 (D.D.C. 2009) (internal quotation omitted) (collecting

cases). This is the situation in this case. As set forth above, plaintiffs' applications are in the Dallas Field Office, where a final decision will be made. Moreover, the Director of the Dallas Field Office "has reviewed the ongoing investigations" regarding plaintiffs' applications and placed the applications "in abeyance pending the outcome of these investigations." Montellano Decl. ¶ 11. The Court therefore concludes that the final decisions regarding *when* to process plaintiffs' applications and *whether* to ultimately approve them will be made in the Northern District of Texas.

Other judges on this Court have repeatedly held that the FBI's role of conducting name checks as part of processing applications for naturalization is attenuated and insignificant when compared to the role of the USCIS field office where the applications are actually adjudicated, and thus does not support venue in Washington D.C. *See, e.g.*, *Aftab*, 597 F. Supp. 2d at 82 ("[T]he FBI may affect the processing of [plaintiff's] application, but the FBI does not adjudicate applications and generally provides a summary of available information to the USCIS for its adjudicative process." (internal quotations omitted)); *Abusadeh v. Chertoff*, Case No. 06-2014, 2007 WL 2111036, at *7 (D.D.C. July 23, 2007) ("[T]hat the FBI, in Washington, D.C., may play a role in the processing of plaintiff's application for naturalization does not alter the

8

fact that the ultimate decision on plaintiff's application for naturalization - the sole decision challenged in plaintiff's complaint, will be made at the USCIS office in Houston, Texas."); *Al-Ahmed v. Chertoff*, 564 F. Supp. 2d 16, 19-20 (D.D.C. 2008) (same). This Court is persuaded by the multiplicity of decisions by other judges on this Court which are directly on point. Moreover, plaintiffs have cited no authority to the contrary. The Court therefore finds plaintiffs' choice of forum is entitled to less deference, and that defendants' choice of the Northern District of Texas is much more closely connected with the claims in plaintiffs' complaint.[1]

The final three private interest factors also favor the Northern District of Texas. Plaintiffs' complaint seeks to expedite a decision that will be made in the Dallas Field Office. In addition, plaintiffs are located in the Northern District of Texas; plaintiffs' files are located in Northern District of Texas; and the ultimate decisionmaker is located in Northern

---

[1] Plaintiffs also argue against transfer to the Northern District of Texas because their applications were sent to the USCIS Atlanta District Office for review. Pls.' Opp'n at 9. As noted above, even if plaintiffs' files were in Atlanta at some point, they have been returned to Dallas. *See* Montellano Supp. Decl. ¶ 6. More important, there has never been any dispute that the final decision regarding their applications would be made in the Dallas Field Office. *See* Divya Chauhan Decl. ¶ 12.c. And in any event, as defendants correctly argue, the fact that plaintiffs' files were in Atlanta does not make the District of Columbia the only appropriate forum for this dispute. *See* Defs.' Reply at 5.

District of Texas.  *See* Montellano Decl. ¶ 1;  Montellano Supp. Decl. ¶ 6.  Plaintiffs' argument that their counsel is located in Maryland does not outweigh these considerations.  *See, e.g.*, *McClamrock v. Eli Lilly & Co.*, 267 F. Supp. 2d 33, 40-41 (D.D.C. 2003) ("[T]he location of counsel carries little, if any, weight in an analysis under § 1404(a)." (internal quotation omitted)).

### 2. Public-Interest Factors

Having concluded that plaintiffs' choice of forum is entitled to less deference and that the other private-interest factors favor transfer to the Northern District of Texas, the Court now turns to the public-interest factors.  The public-interest factors include: (1) the transferee's familiarity with the governing laws; (2) the relative congestion of the calendars fo the potential transferee and transferor courts; and (3) the local interest in deciding local controversies at home. *Devaughn*, 403 F. Supp. 2d at 72.

The first public-interest factor is neutral in the Court's analysis.  With regard to the transferee's familiarity with the governing laws, the Court notes that this case involves federal law, with which both this Court and the Northern District of Texas are equally familiar.  The second factor weighs slightly in favor of a transfer to the Northern District of Texas.  The median time for resolving cases from filing to disposition of a civil case for the 12 month period ending September 30, 2009 was

10

9.0 months in this Court, and 7.0 months in the Northern District of Texas. See Defs.' Mem. at 12 and Ex. 3.

The final factor for the Court to consider is the local interest in deciding local controversies at home. As this Court has repeatedly held, the local interest in resolving local disputes at home "applies to controversies involving federal decisions that impact the local environment, *and to controversies requiring judicial review of an administrative decision.*" *Abusadeh,* 2007 WL 2111036, at *8 (quoting *Sierra Club v. Flowers*, 276 F. Supp. 2d 62, 70 (D.D.C. 2003) (emphasis added)). Plaintiffs argue that this matter is not local to Texas because "FBI officials in Washington D.C. are involved in the delay," Pls.' Opp'n at 12. However, as discussed *supra*, this case ultimately involves a determination of whether the USCIS Dallas Field Office should be compelled to expedite its adjudication of plaintiffs' applications for naturalization. As other judges on this Court have concluded under substantially identical circumstances, the district in which the relevant USCIS Field Office is located is "better positioned" to be involved in "dictating the priorities of a local USCIS office" and "may have a superior interest in doing so." *Aftab*, 597 F. Supp. 2d at 84 (quoting *Abusadeh*, 2007 WL 2111036, at *8); *see also Mohammadi v. Scharfen*, 609 F. Supp. 2d 14, 19 (D.D.C. 2009) (public interest favors transfer where plaintiff resides in transferee district,

has been fingerprinted and interviewed there, and application for naturalization will be adjudicated there; consequently transferee district, not District of Columbia, had a "substantial interest in the resolution of the claims." (citation omitted)). The Court concludes, therefore, that the public-interest factors weigh in favor of transfer of this action to the Northern District of Texas.

**IV. CONCLUSION**

In sum, having balanced plaintiffs' choice of forum in the District of Columbia against the relevant private- and public-interest factors, the Court concludes that the balance of private and public interest counsels in favor of transferring this case to the judicial district with the greatest stake in the pending litigation - plaintiffs' home forum and the site where the decisions on when to process plaintiffs' I-485 applications and whether to approve them will be made - the Northern District of Texas. Accordingly, the Court **GRANTS** defendants' motion to transfer venue. A separate Order accompanies this Memorandum Opinion.

**SIGNED:**     **Emmet G. Sullivan**
                **United States District Court Judge**
                **October 25, 2010**